**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **HAROLD WASHINGTON** | **CIVIL ACTION** |
| **VERSUS** | **NO: 23-6300** |
| **STATE FARM FIRE AND CASUALTY COMPANY** | **SECTION "H"** |

## ORDER AND REASONS

Before the Court is Defendant's Motion for Partial Summary Judgment on Plaintiff's Bad Faith Claims (Doc. 52). For the following reasons, the Motion is **GRANTED.**

## BACKGROUND

This insurance dispute is between Plaintiff, Harold Washington ("Plaintiff"), and his insurer Dover Bay Specialty Insurance Company ("Defendant"), following damage to his property caused by Hurricane Ida.

On or about September 8, 2021, Plaintiff submitted a claim against his property insurance policy with Defendant, alleging property damage and food loss.[1] Defendant inspected the property on September 27, 2021, and issued payment on October 23, 2021. Plaintiff disputed this payment, claiming it failed to include "obvious" damage to his property. As such, Plaintiff hired a

[1] The insured property in question has three structures: the main dwelling house, a garage with an extension that is connected to the main dwelling house, and a separate shed unconnected to the main dwelling house.

contractor to provide a separate estimate. This estimate, calling for a total roof replacement, was given to Defendant. Defendant then requested photographs demonstrating the damage. Plaintiff provided photographs on November 15, 2021; payment was issued three days later.[2]

In the following months, Defendant continued adjusting Plaintiff's claim. Specifically, Defendant made two payments in January of 2022, both for damage to Plaintiff's shed (one for a rafter beam and one for the foundation). The foundation payment was made after Defendant hired Donan Engineering to investigate the source of the damage. Defendant made another payment in February, the day after receiving an estimate for electrical repairs. Defendant's final payment was made in March of 2022 for garage damage and for food loss. The garage damage was reported at the end of February while the estimate for food loss was given the same day as payment.[3] Defendant refused to issue payment, however, in July of 2022, after a report from EFI Global concluded damage to Plaintiff's garage foundation was not caused by Hurricane Ida.

Plaintiff brought suit in Louisiana state court on August 23, 2023. Defendant removed the matter to this Court based on diversity jurisdiction on

[2] Defendant did not find that a total roof replacement was necessary and only issued payment for damages missed in the initial inspection.

[3] Plaintiff had previously informed Defendant on September 8, 2021—the day he initially reported his claim—that his household spent $175 on groceries and $125 on dining out weekly. He did not inform Defendant at that time, however, how much the spoiled food in his freezer and refrigerator was worth.

October 18, 2023. Defendant now moves for summary judgment. Plaintiff opposes.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[4] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[6] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[7] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[8] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to

---

[4] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[5] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[6] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).
[7] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[8] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[9] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[10] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[11]

## LAW AND ANALYSIS

Defendant moves for summary judgment on Plaintiff's bad faith claims, arguing that Defendant timely inspected, adjusted, and paid Plaintiff's claims in good faith. Plaintiff argues that Defendant was arbitrary and capricious while adjusting his claim by engaging in "shoddy" adjustment practices. In addition, Defendant has objected to Plaintiff's evidence in opposition. The Court will start by addressing this objection.

### I. Defendant's Objection to Unauthenticated Exhibits

At the outset, this Court must address Defendant's objections to Exhibits B and C of Plaintiff's Opposition, which are claim file excerpts made by Defendant during the adjustment of Plaintiff's claim. Defendant contends that these exhibits are not admissible evidence on summary judgment because they were not authenticated by an affidavit.[12] However, the Court finds that Exhibit B is proper summary judgment evidence because it is "*capable* of being

[9] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[10] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[11] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. Feb. 22, 2005).
[12] Doc. 59 at 1–2.

'presented in a form that would be admissible in evidence.'"[13] The Court also finds that Exhibit C is proper because it cites to documents already authenticated and in the record.[14] Accordingly, Defendant's objection fails and Exhibits B and C will be considered by the Court.

## II. Bad Faith Claims

Defendant moves for summary judgment dismissal of Plaintiff's bad faith claims. Defendant presents evidence that it argues demonstrates it "timely inspected Plaintiff's property, made timely payments to Plaintiff, continued to adjust Plaintiff's claims upon the receipt of additional information from Plaintiff, and hired experts to inspect the property" when it had reasonable doubt as to the cause of certain damages.[15] Against this backdrop, Defendant says, Plaintiff cannot create a genuine issue of fact for trial.

Louisiana Revised Statutes § 22:1892 provides that an insurer in Louisiana has a duty to pay a claim in a timely fashion and that when a failure to pay is found "to be arbitrary, capricious, or without probable cause" then the

---

[13] LSR Consulting, LLC v. Wells Fargo Bank, N.A., 835 F. 3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)) (emphasis in original). Specifically, Plaintiff avers that he would be able to present the excerpts from the claim file, attached as Exhibit B, in admissible form at trial "through the testimony of a representative of Defendant." Doc. 58 at 2 n.1. Because the testimony of a witness with personal knowledge satisfies the authentication requirements of Federal Rule of Evidence 901, Plaintiff has shown that Exhibit B is capable of being presented in an admissible form at trial. Defendant's argument relies on cases interpreting the pre-amended version of Rule 56. Doc 59 at 1–2 (quoting Brooks v. Safeco Ins. Co. of Am., No. 16-309, 2017 WL 8944056, at *11 (M.D. La. Nov. 13, 2017, and citing Rizzuto v. Allstate Ins. Co., 2009 WL 1158677 (E.D. La. April 27, 2009)).

[14] The Defendant objects to the admission of the same documents used to support its own Motion. *See* Doc. 52-5 at 3–36. Plaintiff's Opposition cites to the "documents bates stamped as PD 000027-000056" filed as part of Defendant's Motion for Summary Judgment. Doc. Doc. 58 at 2 n.2.

[15] Doc. 52-1 at 1.

insurer may be liable for the resulting damages and for statutory penalties, attorney's fees, and costs.[16] Similarly, Louisiana Revised Statutes § 22:1973 authorizes an award of penalties when an insurer's failure to pay a claim within 60 days of receipt of a satisfactory proof of loss is "arbitrary, capricious, or without probable cause."[17] The Louisiana Supreme Court has clarified that § 22:1892 and § 22:1973 prohibit "virtually identical" conduct with the "primary difference" being "the time periods allowed for payment."[18] Success under either statute requires the plaintiff prove by a preponderance of the evidence that "the denial of coverage was 'arbitrary, capricious, or without probable cause.'"[19] The insured has the burden—"a high burden"[20]—of proving that the insurer acted in bad faith.[21]

To procure penalties and damages, an insured must demonstrate that "(1) an insurer has received satisfactory proof of loss, (2) the insurer fails to tender payment within thirty [or sixty] days of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious or without probable cause."[22] As

---

[16] LA. REV. STAT. § 22:1892(B)(1). § 22:1892 was previously cited as § 22:658 until it was renumbered by 2008 La. Acts No. 4, § 1.

[17] LA. REV. STAT. § 22:1973(B)(5). § 22:1973 was recently repealed by 2024 La. Acts No. 3, § 2 with an effective date of July 1, 2024. With this repeal, § 22:1973 was largely incorporated into § 22:1892, creating a single penalty statute. William Shelby McKenzie & H. Alston Johnson, III, *15 La. Civ. L. Treatise, Insurance Law & Practice* § 11:1 (4th ed. 2025). Plaintiff's petition was filed before this repeal, alleging claims under both statutes.

[18] Reed v. State Farm Mut. Auto Ins. Co., 857 So. 2d 1012, 1020 (La. 2003).

[19] Bellina v. Liberty Mutual Ins. Co., No. 19-13711, 2021 WL 1295018, at *6 (E.D. La. April 7, 2021) (quoting Guillory v. Lee, 16 So. 3d 1104, 1126–1127 (La. 2009)).

[20] Sacks v. Allstate Prop. & Cas. Ins. Co., No. 16-16578, 2017 WL 4791179, at *3 (E.D. La. Oct. 24, 2017) (citing Lewis v. State Farm Ins. Co., 946 So. 2d 708, 725 (La. App. 2d Cir. 2006)).

[21] Kodrin v. State Farm Fire and Cas. Co., 314 Fed. App'x 671, 679 (5th Cir. 2009) (citing *Reed*, 857 So. 2d at 1021).

[22] La. Bag. Co., Inc. v. Audubon Indem. Co., 999 So. 2d 1104, 1112–13 (La. 2008).

defined by the Louisiana Supreme Court, "arbitrary and capricious" means a "vexatious refusal to pay" which is "unjustified, without reasonable or probable cause or excuse."[23] Penalties should only be imposed by the Court "when the facts 'negate probable cause for nonpayment.'"[24] Because § 22:1892 is "penal in nature," it "must be strictly construed."[25]

In Opposition, Plaintiff contends the evidence creates a genuine issue of material fact as to whether Defendant's adjustment was "shoddy" and could result in a finding of bad faith.[26] Plaintiff offers as evidence his own sworn affidavit, emails attached with photographs depicting damage to his property sent to Defendant, photographs from the initial inspection of his property, and claim file excerpts created by Defendant during the adjustment of his claim. Plaintiff's arguments fall into three main categories: (1) the adjuster's initial inspection; (2) the food loss claim; and (3) the inspections by Donan Engineering and EFI Global. Each category, and the facts supporting them, will be addressed in turn.

**a. The Adjuster's Initial Inspection**

Plaintiff claims that Defendant's initial inspection arbitrarily and capriciously ignored obvious damage to his property, causing a gross undervaluation of his claim and drawing into question whether subsequent

---

[23] *Reed*, 857 So. 2d at 1021 (quoting La. Maint. Servs., Inc. v. Certain Underwriters at Lloyd's of London, 616 So. 2d 1250, 1253 (La. 1993)).

[24] *Audubon Indem. Co.*, 999 So. 2d at 1114 (quoting Guillory v. Travelers Ins. Co., 294 So. 2d 215, 217 (La. 1974)).

[25] Sher v. Lafayette Ins. Co., 988 So. 2d 186, 206 (La. 2008) (quoting *Reed*, 857 So. 2d at 1020–1021).

[26] Doc. 58 at 16.

payments were timely.[27] Plaintiff makes several contentions to support this argument. Specifically, in his affidavit, Plaintiff avers that while inspecting the home's roof, "the Dover Bay adjuster did not ask [him] to move tarps that were covering damaged portions of [his] roofs so that damage present under said tarps could be documented," nor did he witness the adjuster move tarps covering portions of his roofs.[28] Plaintiff contends that despite taking photos of these tarps and witnessing obvious damage, Defendant's initial estimate left out payment for the dwelling roof.[29] Plaintiff also contends the fact that he was paid for damage under the tarps within three days of submitting photos on November 15, 2021, demonstrates satisfactory proof of loss upon the initial inspection and raises questions as to why these damages were not accounted for in the first place.[30] In addition, Plaintiff points to the fact that later payments had to be made for damage to a rafter beam in his garage/shed area. Plaintiff claims these damages were "clearly visible" and "obvious" during the initial inspection based on photographs attached to an email sent to Defendant on November 30, 2021 and the adjuster's photographs from the initial inspection on September 27, 2021.[31] And finally, Plaintiff argues that his tractor shed may not have been properly adjusted because photographs of the

---

[27] *Id.* at 1.
[28] Doc. 58-2 at ¶¶20–21.
[29] Doc. 58 at 17. Plaintiff contends that the initial estimate only included roof damage for "the right and left slope of the carport."
[30] The Claim Files indicate that after looking at Plaintiff's batch of November 15, 2021, photos, Defendant's adjuster concluded that the "[l]eft slope replacement is warranted from photos of damages on roof and underneath the tarp" and that "[s]hed damages are warranted via photos of damages to ceilings and roof." Doc. 52-5 at 23. The adjuster also concluded that a "total roof replacement [is] not warranted due to not enough evidence that roof can't be repaired." *Id*. An additional $3,899.97 payment was requested to be authorized. *Id.*
[31] These photographs are in the record at 58-2 at 11–12, 86–89.

shed were only taken from the ground level and he does not "recall the Dover Bay adjuster getting on the roof of the tractor shed to assess its damage."[32]

Plaintiff is correct that "sending an adjuster to an insured's property to perform an inadequate inspection does not fulfill the insurer's duty under the penalty statutes" and "can subject an insurer to bad faith penalties."[33] However, the Court finds that Plaintiff has not met his "high burden" to show there is a genuine issue as to whether that occurred here.[34] Indeed, "speculation, improbable inferences, unsubstantiated assertions, and legalist argumentation do not adequately substitute for specific facts showing a genuine issue for trial."[35]

Plaintiff's contention that Defendant did not include damage to the dwelling roof is plainly controverted by evidence in the record. The claim file excerpts clearly show the initial estimate included a line item "ROOFING" with coverage being identified for the "[d]welling," valued at $5,479.52.[36] Thus, Plaintiff's claim that damage to the dwelling roof was not included in the initial estimate is without merit.

Similarly, the Court is unwilling to infer that the adjuster's failure to remove the tarp was done arbitrarily and capriciously. The Louisiana Supreme

---

[32] Doc. 52-2 at ¶13.
[33] *See e.g.*, Aghighi v. La. Citizens Prop. Ins. Corp., 119 So.3d 930 (La. App. 4 Cir. 2013) ("The insurer's duty under La. R.S. 22:1892 mandates more than merely sending an adjuster to the insured's property to take pictures and calculate numbers on less than all the damage. It would defeat the purpose of the statute to allow an inadequate and unreasonably low adjustment, done within the requisite time delays, to satisfy the insurer's obligation to the insured.").
[34] *Sacks*, 2017 WL 4791179, at *3 (citing *Lewis*, 946 So. 2d at 725).
[35] Oliver v. Scott, 276 F.3d 736, 744 (5th Cir. 2002).
[36] Doc. 52-5 at 52.

Court has held that "arbitrary, capricious, or without probable cause" is synonymous with "vexatious."[37] Plaintiff's burden of showing vexatiousness is a "high burden," especially considering that, in this case, it is based on an initial inspection.[38] As an example of this high burden, in *Aghighi v. Louisiana Citizens Property Insurance Corp.*—a case in which an adjuster's deficient inspection led to bad faith liability for the insurer—the adjuster's initial estimate was undervalued by $61,033.13.[39] Moreover, the Plaintiff supported his claim of bad faith through the testimony of his own adjuster. This adjuster testified that the initial report and estimate were "woefully inadequate" because it did not include "damage that should have been on [the initial] report."[40]

The facts here are distinguishable. In this case, Defendant's initial estimate for damage to the dwelling roof and shed, which includes damage found under the tarp, was undervalued by $3,899.97.[41] And, the total undervaluation in the initial estimate was $11,257.48, less than a quarter of the undervaluation in *Aghighi*.[42] In addition, Plaintiff presents no testimony

---

[37] *Audubon Indem. Co.*, 999 So. 2d at 1114.

[38] *Sacks*, 2017 WL 4791179, at *3 (citing *Lewis*, 946 So. 2d at 725); *see e.g., Aghighi*, 119 So. 3d 930.

[39] 119 So. 3d at 935.

[40] *Id.* at 934.

[41] Supplemental payment was made on November 18, 2021, three days after proof of loss was submitted on November 15, 2021, and less than a month after the initial payment on October 23, 2021. Doc. 52-5 at 23. Payment was made for

[42] Payments include $3,899.97 made on November 18, 2021, for the shed and dwelling roof damage; a $537.24 payment made on January 3, 2022, for damage to a rafter beam in the shed; a $2,802.64 payment made on January 28, 2022, for cracks in the slab of the shed/garage area; a $1,000 payment made on February 15, 2022, for electrical repairs in the shed; a $2417.63 payment made on March 7, 2022, for damage to the garage ceiling; and a $600 payment made on March 7, 2022, for food loss.

from an expert attesting to the quality of the adjuster's inspection. Instead, Plaintiff speculates as to why the tarp was not moved and why certain damages were not included in the initial estimate. It is not clear from the facts in this record, unlike the record in *Aghighi*, that Defendant's failure to move the tarp resulted in an "unreasonably low" or "woefully inadequate" adjustment. Because § 22:1892 is "penal in nature," it "must be strictly construed."[43] And, considering the vast differences between *Aghighi* and this case, the Court refuses to broaden its construction here by finding the adjuster's failure to move tarps during the inspection raises a genuine issue regarding Defendant's bad faith.

Plaintiff's other arguments fair no better. The Court finds Plaintiff's contention that the damage to the rafter beam in the shed was "obvious" and, therefore, should have been included in the initial estimate does not create a genuine issue. "Whether or not a refusal to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action."[44] The November 30, 2021, photographs submitted by Plaintiff show a materially more damaged beam than the one depicted in the initial inspection photographs.[45] And, once Defendant confirmed payment was warranted on December 4, 2021, it issued payment within thirty days on January 3, 2022.[46] The Court does not find it at all arbitrary for an insurer to

---

[43] *Sher*, 988 So. 2d at 206 (quoting *Reed*, 857 So. 2d at 1020–1021).
[44] *Reed*, 857 So. 2d at 1021 (citing Scott v. Ins. Co. of N. Am., 485 So. 2d 50, 52 (La. 1986)).
[45] *Compare* Doc. 58-2 at 11–12 *with id.* at 86–89. The September photograph depicts a cracked beam while the November photograph depicts a partially collapsed beam.
[46] Doc. 58-4 at 16–19.

adjust a claim as more information regarding the extent of the damage is provided.

In addition, and for similar reasons, the Court is also unwilling to infer bad faith based on Plaintiff's assertion that the tractor shed may not have been properly adjusted. "While a plaintiff need not submit 'proof of specific acts or proof of the insurer's state of mind ... to establish conduct that is arbitrary, capricious or without probable cause,' it also cannot rest on bare assertions that are unsupported by any evidence."[47] Plaintiff's bare assertions here fail to raise a genuine issue.[48]

While Plaintiff may have presented enough evidence to create a genuine issue as to whether the initial inspection was negligent, or even grossly negligent, he has failed to create a genuine issue as to whether it was "vexatious," a materially higher standard than mere negligence.[49]

**b. The Food Loss Claim**

Aside from alleged deficiencies in the initial inspection, Plaintiff also argues that Defendant's handling of his claim for food loss creates a genuine issue. Specifically, Plaintiff points out that Defendant was informed on September 8, 2021, that all the food in his refrigerator and freezer was lost; however, Plaintiff was not paid for the food loss until March 7, 2022, several

---

[47] Jackson v. State Farm Fire & Cas. Co., No. 06-7202, 2010 WL 724108, at *6 (E.D. La. Feb. 22, 2010) (quoting *Audubon Indem. Co.*, 999 So. 2d at 1121) (internal citation omitted).

[48] Because success under either penalty statute requires the plaintiff show that "the denial of coverage was 'arbitrary, capricious, or without probable cause,'" and the Court has found that has not occurred as a result of the initial inspection, it does not, and need not, address whether the initial inspection constituted satisfactory proof of loss. *Bellina*, 2021 WL 1295018, at *6 (quoting *Lee*, 16 So. 3d at 1126–1127).

[49] To be clear, the Court makes no finding as to whether the Defendant's initial inspection was actually negligent or grossly negligent.

months after satisfactory proof of loss. Plaintiff contends that, because Defendant was aware his family spent $175 a week on groceries, it was required to tender "an undisputed amount of, at least, $175."[50]

This Court, however, disagrees. While it is true that "an insurer need only fail to tender one undisputed portion of the claim to be subject to penalties on the difference between the amount paid or tendered and the amount found to be due,"[51] it is also true that proof of loss "must include *the extent of damages*."[52] "[A] plaintiff who possesses information that would suffice as satisfactory proof of loss, but does not relay that information to the insurer is not entitled to a finding that the insurer was arbitrary or capricious."[53]

Here, the record shows that the first time Plaintiff relayed an estimate for the value of the food lost *during the storm* to Defendant was March 7, 2022; Defendant made a $600 payment for the food loss the same day.[54] In other words, Defendant tendered payment the same day it received satisfactory proof of loss. Plaintiff's contention that Defendant should have tendered at least what Plaintiff spent a week on groceries is inapposite. Plaintiff's claim is for the food that spoiled as a result of the storm, not for his weekly grocery bill. Accordingly, because Defendant made payment within thirty days of

---

[50] Doc. 58 at 20.
[51] *Audubon Indem. Co.*, 999 So. 2d at 1122.
[52] Anco. Insulations, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 787 F. 3d 276, 286 (5th Cir. 2015) (citing Richardson v. GEICO Indem. Co., 48 So. 3d 307, 314 (La. App. 1 Cir. 2010)) (emphasis added).
[53] *Reed*, 857 So.2d at 1021 (citing Hart v. Allstate Ins. Co., 437 So. 2d 823, 828 (La. 1983)).
[54] Plaintiff informed Defendant on March 7, 2022, that "he had about $600.00 worth of food at the time of the loss which included plenty of seafood, steaks, ground meat,/turkey and chicken along with condiments, dairy, frozen vegetables and eggs…advised he didn't know if it would be covered but he didn't take photos." Doc. 58-4 at 7.

satisfactory proof of loss, the Court finds Plaintiff has failed to raise a genuine issue regarding Defendant's handling of his food loss claim.

**c. The Inspections by Donan Engineering and EFI Global**

Plaintiff suggests that Defendant's use of two different experts to investigate cracks in the foundation of his garage/shed area creates a genuine issue for trial. Plaintiff contends that it is "suspect" for Defendant to have hired EFI Global, a firm with a higher fee than Donan Engineering, to conduct a follow-up inspection on his garage slab, especially considering that Donan Engineering concluded some of the shed-slab damage was caused by Hurricane Ida, while EFI Global concluded the garage-slab damage was not.[55]

The Court is unmoved by Plaintiff's argument. Plaintiff's burden is to "set forth specific facts indicating that a genuine issue exists for trial," not to baselessly speculate that Defendant's motive for hiring a different inspector is "suspect."[56] "The sanctions of penalties and attorney fees are not assessed unless a plaintiff's proof is *clear* that the insurer was in fact arbitrary, capricious, or without probable cause in refusing to pay."[57] There is nothing clear about Plaintiff's evidence here. In sum, Plaintiff has not shown a material

---

[55] Doc. 58 at 22. The part of the garage slab EFI Global was hired to inspect should have been included in Donan's original inspection; however, for unclear reasons, it was not. Doc. 58-5 at 6. Plaintiff does not argue that payment was untimely due to Defendant's decision to hire experts to investigate the source of the cracks.

[56] *Jackson*, 2010 WL 724108, at *3 (citing *Celotex*, 477 U.S. at 324–25) (internal citation omitted); *see e.g.*, Guidry v. State Farm Fire & Cas. Co., No. 23-1286 (M.D. La. Nov. 20, 2025) (finding that a plaintiff's argument that an adjuster's behavior was "retaliatory" based on a denial letter and a disagreement on the scope of damage was "speculation" which "is not sufficient evidence of vexatious conduct by Defendant to create a genuine issue for trial").

[57] *Jackson*, 2010 WL 724108, at *3 (quoting *Reed*, 857 So.2d at 1021) (emphasis in original).

issue of fact precluding this Court from granting Defendant's Motion to dismiss his bad faith claims.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana this 24th day of September, 2026.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**